wo

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Salt River Pima-Maricopa Indian Community, et al.,

    Plaintiffs,

vs.

United States of America, et al.

    Defendants.

No. CV-08-1005-PHX-ROS

**ORDER**

## Procedural History

On May 30, 2008 the Salt River Pima-Maricopa Indian Community and various Community members (Plaintiffs/Counterdefendants) filed a tort class action against the United States and its officers (Defendants/Counterclaimants) relating to the unauthorized presence of federal power lines on Plaintiffs' property, seeking monetary, declaratory and injunctive relief (Doc. 1).[1] On August 11, 2008 Defendants filed a Motion to Stay Proceedings, pending the outcome of a related action for breach of contract before the Federal Court of Claims (Docs. 21-22). On October 27, 2008 the Motion was denied and Defendants were ordered to file an Answer (Doc. 29). On November 5, 2008 Defendants filed an Answer and Counterclaim requesting equitable relief against Plaintiffs (Doc. 32).

---

[1] The Complaint was amended on July 28, 2008 (Doc. 17).

On November 25, 2008 Plaintiffs filed a Motion to Dismiss Counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6) (Docs. 39-40). On December 12, 2008 Defendants responded and, on December 31, 2008, Plaintiffs replied (Docs. 47, 50). Before the Court is Plaintiffs' Motion to Dismiss, which will be granted.

**Background**

On October 28, 1942 Congress enacted Public Law 764, authorizing the Secretary of the Department of the Interior ("Secretary") to designate Indian lands necessary for the completion of the Parker Dam power project, including placement of electric transmission lines, and to acquire such lands for the United States in exchange for just compensation (Doc. 47 Ex. A). See Act of Oct. 28, 1942, ch. 630, 56 Stat. 1011, Pub. L. No. 77-764. On February 5, 1948, Congress enacted the Indian Right-of-Way Act ("IRWA"), which established certain criteria for granting rights-of-way across Indian lands and otherwise authorized the Secretary to regulate the creation of easements on Indian reservations. IRWA became effective thirty days after enactment (Doc. 40 Ex. 3).

On March 5, 1948 the Community Council of Plaintiff Salt River Pima-Maricopa Indian Community ("SRPMIC") authorized the Department of the Interior Bureau of Reclamation ("BOR") to enter the SRPMIC reservation to conduct surveys related to the placement of Parker Dam power project transmission lines. The authorization was granted with the understanding that BOR, upon deciding to construct transmission lines on the reservation, would apply for an easement "in the usual manner" and compensate SRPMIC for both land use and property damage caused by construction and surveying (Doc. 40 Ex. 1). On August 1, 1949 BOR executed a Contract and Grant of Easement with owners of certain allotted lands on the SRPMIC reservation for the purpose of transmission line construction (Doc. 40 Ex. 2). On September 21, 1949 the SRPMIC Community Council, noting BOR's pending application for an easement with the Department of the Interior Bureau of Indian Affairs ("BIA"), authorized construction of the transmission lines (Doc. 47

Ex. D). The duration of the agreed-upon easement is not discussed in any of the above-referenced documents.

On March 29, 1950 the Secretary provisionally authorized BOR to begin construction of transmission lines on the SRPMIC reservation, noting that a permanent easement had not yet been approved (Doc. 40 Ex. 5). On August 10, 1951 the Secretary promulgated regulations for IRWA and set a fifty-year limitation on specified easements across Indian lands, including those for electric transmission lines (Doc. 40 Ex. 6). On December 17, 1951 the BIA Commissioner ("Commissioner") approved BOR's easement application, restricting the easement to fifty years in accordance with the new regulations (Doc. 40 Ex. 7-8). On October 31, 2007 SRPMIC President Diane Enos notified Defendants of the expiration of the BOR easement and presented Plaintiffs' claim for damages (Docs. 1 Ex. 1; 30 Ex. 1). On May 30, 2008, Plaintiffs filed suit (Doc. 1).

**Discussion**

**A. Standard**

A motion to dismiss a counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") is judged by the same standard as a motion to dismiss a claim.[2] Accordingly, a court's inquiry "is limited to the allegations in the [counter-]complaint, which are accepted as true and construed in the light most favorable to the plaintiff." Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 588 (9th Cir. 2008); see also Aagard v. Palomar Builders, Inc., 344 F. Supp. 2d 1211, 1214 (E.D. Cal. 2004) ("On a motion to dismiss, the allegations of the counter complaint must be accepted as true . . . the counter complaint is construed

---

[2] See e.g. Penn. R.R. Co. v. Musante-Phillips, Inc., 42 F. Supp. 340, 341 (N.D. Cal. 1941) ("[I]t is incumbent upon the court to sustain a complaint if there is any possible theory upon which liability can be based . . . Obviously, this doctrine must apply to counterclaims."); Res. Lenders, Inc. v. Source Solutions, Inc, 2005 WL 3525670, *3 (E.D. Cal. 2005) ("A motion to dismiss a counterclaim for failure to state a claim is evaluated in the same manner as a motion to dismiss a complaint under Rule 12(b)(6)."); In re Acacia Media Tech.'s Corp., 2005 WL 1683660, *3 (N.D. Cal. 2005) (same).

favorably to the pleader"). However, a court "need not accept as true allegations contradicting documents that are referenced in the [counter-]complaint or that are properly subject to judicial notice." Lazy Y Ranch Ltd., 546 F.3d at 588. Consideration of materials incorporated by reference in the counter-complaint is permitted when "plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document." Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005). The counterdefendant bears the burden of proving the counterclaimant fails to state a claim. See e.g. Hedges v. U.S., 404 F.3d 744, 750 (3d Cir. 2005); Bangura v. Hansen, 434 F.3d 487, 498 (6th Cir. 2006); James Wm. Moore, 2 Moore's Federal Practice § 12.34[1][a] at 12-73 (2008 ed.).

**B. Counterclaim**

Defendants allege the easement approved by the Commissioner on December 17, 1951 did not conform to the intent of the parties, as expressed by the prior agreements, or to the intent of Congress, as expressed by Public Law 764. Defendants specifically allege the Commissioner erred by incorporating a fifty-year duration into the easement, which, according to Defendants, was intended by both Congress and the parties to last in perpetuity (Doc. 32 at 11-13). Defendants thus seek to equitably reform the easement to last in perpetuity (Doc. 32 at 13).[3]

---

[3] The doctrine of equitable reformation appears to be properly pled in the Counterclaim. Federal common law governs Indian land disputes and a number of recent opinions have applied equitable doctrines, including reformation, to such cases. See County of Oneida v. Oneida Indian Nation, 470 U.S. 226, 233-36 (1985) (absent a governing statute or treaty, federal common law governs "aboriginal land rights"); see also e.g. Jicarilla Apache Tribe v. Andrus, 687 F.2d 1324, 1341 & n.11a (10th Cir. 1982) (upholding the application of federal common law and equitable tolling to a lease between an Indian lessor and a third-party lessee); Oneida Indian Nation of N.Y. v. N.Y., 500 F. Supp. 2d 128, 139 (N.D. N.Y. 2007) (upholding against summary judgment a claim for equitable reformation of a land contract between an Indian Tribe and a State). Moreover, the Counterclaim fits with the doctrine, which is defined under federal law as:

> [A]n equitable remedy by which a written instrument is made or construed to express the real intention of the parties when some error or mistake has been committed. Equity has power to reform and

**C. Motion to Dismiss**

Plaintiffs seek dismissal of the Counter-complaint for failure to state a claim, arguing reformation would violate the 1951 IRWA regulations' fifty-year limitation on transmission line easements across Indian lands. Plaintiffs are correct that the doctrine of equitable reformation may not be invoked to reform an agreement into one which contravenes public policy, including current law or the law at the time the agreement was formed. See Hedges v. Dixon County, 150 U.S. 182, 192 (1893) ("[E]quity follows the law . . . wherever the rights or the situation of parties are clearly defined and established by law, equity has no power to change or unsettle those rights or that situation") (internal citation omitted); see also e.g. Trowell v. S. Fin. Group, Inc., 2008 WL 4787142, *2 (11th Cir. 2008) (*per curiam*) ("A court cannot give effect to a proposed reformation that would result in an invalid or illegal contract.") (citing Hedges, 150 U.S. at 192).

Defendants do not contest that the 1951 IRWA regulations limited to fifty years the duration of transmission line easements across Indian lands. Nor do Defendants contest that the easement at issue was finalized by the Commissioner on December 17, 1951 (Doc. 32 at 11). Instead, Defendants argue the proposed reformation would not violate public policy because the 1951 regulations were inapplicable to the easement. Specifically, Defendants contend their right to the easement vested upon enactment of Public Law 764, in 1942, prior to promulgation of the 1951 regulations. Defendants also contend, because IRWA did not repeal Public Law 764, any portion of the 1951 regulations inconsistent with Public Law 764, including the fifty-year limitation, did not apply to the easement. The question presented is

---

> correct a valid written instrument to make it conform to the agreement actually made. A proceeding to reform a contract presupposes that the instrument does not express the true intent of the parties. It contemplates a continuance of the contractual relation. Its purpose is not to make a new contract but to give effect to the original intent of the parties.
>
> N. Pac. Ry. Co. v. U.S., 70 F. Supp. 836, 866 (D. Minn. 1946) (citing Bartelme v. Merced Irrigation Dist., 31 F.2d 10 (9th Cir. 1929)).

- 5 -

whether the 1951 regulations apply to the easement and render Defendants' proposed reformation illegal. Defendants advance two arguments.

**1. Date of Easement's Vesting**

Defendants argue the 1951 regulations were inapplicable to the easement because Defendants' right to the easement vested in 1942, upon enactment of Public Law 764. Public Law 764, however, did not identify any particular parcel or allotment, but rather "granted to the United States . . . [s]uch right, title, and interest of the Indians as may be required in and to such tribal and allotted lands as may be designated by the Secretary of the Interior from time to time for the construction, operation, and maintenance of electric transmission lines and other works of the project" (Doc. 47 Ex. A). Pub. L. No. 77-764 § 1. To interpret Public Law 764 as vesting the easement upon enactment, Defendants rely on the doctrine of *in praesenti* land grants.

An *in praesenti* land grant occurs when Congress authorizes the disposition of federal land to a third party in exchange for a condition precedent act, such as the construction of a railroad track or electric transmission line. The grant is one of unfixed location and the specific parcels within the grant are determined by the completion of the condition precedent act (e.g. when the grantee lays the railroad track or builds the transmission lines, all land beneath the track or line becomes part of the grant). In this way, the particular contours of the grant are chosen by the grantee. Once the act is completed, satisfaction of the condition precedent must be verified by a government agent. Upon verification, the land encompassed within the grant becomes fixed and vests to the grantee, relating back to the date of the initial Congressional enactment. See S. Pac. Transp. Co. v. Watt, 700 F.2d 550, 555 (9th Cir. 1983).

Defendants argue Public Law 764 is analogous to a number of statutes interpreted by the Supreme Court to be *in praesenti* grants and thus the easement in this case, although finalized in 1951, was granted *in praesenti*, vesting retroactively in 1942. The Court disagrees. Defendants' analogy rests on the fact that the cited statutes and Public Law 764

share similar statutory language, such as the phrase "is hereby granted." See e.g. Mo., Kan., & Tex. Ry. Co. v. Kan. Pac. Ry. Co., 97 U.S. 491, 496 (1878) ("Its language is, 'that there be and is hereby granted' . . . words which import a grant *in praesenti* and not one *in futuro*") (citing Act of Jul. 1, 1862, ch. 70, 12 Stat. 489 at § 2); Leavenworth, Lawrence & Galveston R.R. Co. v. U.S., 92 U.S. 733, 741 (1875) ("'There be and is hereby granted' are words of absolute donation, and import a grant *in praesenti*.") (citing Act of Mar. 3, 1863, ch. 48, 12 Stat. 772 at § 1); see also Pub. L. No. 77-764 at § 1 ("That in aid of the construction of the Parker Dam power project, there is hereby granted to the United States . . ."). However, the use of magic words, without more, is insufficient to create an *in praesenti* grant. The unspoken assumption in Defendants' cited cases, which led the Supreme Court to conclude the phrase "is hereby granted" connoted an *in praesenti* grant, was that the grantee was a railroad company. See N.Y. Indians v. U.S., 170 U.S. 1, 17 (1898) ("In the cases arising under the railroad land grants . . . language of the granting clause was in the present tense, 'there be, and hereby is, granted,' etc.; and it has always been held that these grants were in praesenti") (citing Mo., Kan., & Tex. Ry. Co. and Leavenworth, Lawrence & Galveston R.R. Co.). The grantee in this case is not a railroad. Although grants to non-railroads have been found to be *in praesenti*, such a determination must rest on the structure of the grant, not particular words or phrases found in the statute.

As discussed above, *in praesenti* grants involve unfixed land grants conditioned on the completion of a precedent act. In completing the act, the grantee chooses the parcels to be included within the grant. Upon completing the act, the condition precedent is verified by a government agent and fixed title in the chosen parcels vests to the grantee, relating back to the date of the original Congressional enactment. See S. Pac. Transp. Co., 700 F.2d at 555. The statutes in Defendants' cited cases offer clear examples of this structure.[4] Public

---

[4] See e.g. Act of Jul. 1, 1862, ch. 70, 12 Stat. 489 at §§ 2, 4 ("That the right of way through the public lands be, and the same is hereby, granted to said company for the construction of said railroad and telegraph line; and the right, power, and authority is hereby given to said company to take from the public lands adjacent to the line of said road . . . [W]henever said company shall have

Law 764, however, does not. While Public Law 764 establishes an unfixed grant of land to BOR and the Parker Dam power project, neither grantee has the authority to choose the parcels within the grant but rather the Secretary designates the scope of the grant. See Pub. L. No. 77-764 at § 1 ("[T]here is hereby granted to the United States . . . right, title, and interest of the Indians as may be required in and to such tribal and allotted lands *as may be designated by the Secretary of the Interior*") (emphasis added). Moreover, there is no condition precedent to satisfy or ministerial verification process; the Secretary discretionarily designates grant lands "from time to time" and is otherwise "authorized to perform any and all acts . . . to carry out the provisions of this Act." Id. at §§ 1, 4.

Contrary to Defendants' argument, the structure of Public Law 764 bears little resemblance to an *in praesenti* grant. Instead, Public Law 764 appears to be part of a patchwork scheme, scheduled to occur over an extended period of time, in which the Secretary was directed to transfer land at his discretion from affected Indians to BOR and the Parker Dam power project, in exchange for just compensation, and title was meant to vest with BOR and Parker Dam upon completion of each transaction. This reading of Public Law 764 is supported by at least one other district court, which interpreted the statute not as a large

---

completed forty consecutive miles of any portion of said railroad and telegraph line . . . the President of the United States shall appoint three commissioners to examine the same and report to him in relation thereto; and if it shall appear to him that forty consecutive miles of said railroad and telegraph line have been completed and equipped in all respects as required by this act, then . . . patents shall issue conveying the right and title to said lands to said company, on each side of the road as far as the same is completed") (interpreted in Mo., Kan., & Tex. Ry. Co., 97 U.S. at 496); Act of Mar. 3, 1875, ch. 152, 18 Stat. 482 at §§ 1, 4 ("That the right of way through the public lands of the United States is hereby granted to any railroad company duly organized under the laws of any State or Territory . . . That any railroad-company desiring to secure the benefits of this act, shall, within twelve months after the location of any section of twenty miles of its road . . . file with the register of the land office for the district where such land is located a profile of its road; and upon approval thereof by the Secretary of the Interior the same shall be noted upon the plats in said office; and thereafter all such lands over which such right of way shall pass shall be disposed of subject to such right of way") (interpreted in Great N. Ry. Co. v. U.S., 315 U.S. 262, 272 n.4 (1942)); see also e.g. U.S. v. Magnolia Petroleum Co., 110 F.2d 212, 216-18 (10th Cir. 1939) (interpreting Act of Feb. 28, 1902, ch. 134, 32 Stat. 43 at §§ 13, 15).

grant of land effective upon satisfaction of a condition precedent, but rather as an enabling statute which conferred upon the Secretary authority to acquire title to Indian lands at his discretion. See Quechan Indian Tribe v. U.S., 535 F. Supp. 2d 1072, 1092 (S.D. Cal. 2008) ("Because the Court finds the 1942 Act authorized the Secretary to divest the Tribe of its interest in its land, the Court must now look to the language of the Secretarial Determination to ascertain whether the Secretary did, in fact, divest the Tribe of its interests."). Accordingly, Defendants' argument is rejected.

**2. Public Law 764 – IRWA Conflict**

Defendants next argue the 1951 IRWA regulations' fifty-year limitation was inapplicable to the easement because: (1) the easement was authorized by Public Law 764, which was not expressly repealed by IRWA; (2) Public Law 764 conflicted with IRWA by requiring easements in perpetuity; and thus (3) Public Law 764, not IRWA, was the controlling statute with respect to easement duration. Defendants are correct that IRWA did not repeal Public Law 764 and was designed to supplement rather than displace prior special legislation which had granted easements across Indian lands. See Neb. Pub. Power Dist. v. 100.95 Acres of Land in County of Thurston, 719 F.2d 956, 959 (8th Cir. 1983) ("[T]he explanation of this provision does suggest a general intent in the 1948 Act [IRWA] of adding to, rather than replacing, existing legislation concerning rights-of-way across Indian lands."); Blackfeet Indian Tribe v. Mont. Power Co., 838 F.2d 1055, 1058-59 (9th Cir. 1988) (adopting Neb. Pub. Power Dist.'s analysis concerning IRWA's interplay with prior easement statutes). However, the Court disagrees that IRWA and Public Law 764 conflicted.

Defendants contend the statute and regulation are in conflict because the 1951 IRWA regulations limited transmission line easements to fifty-years while Public Law 764 required perpetual easements. However, Public Law 764, on its face, is silent concerning the question of easement duration. In support, Defendants compare Public Law 764 to a 1911 statute, which expressly limited easements across Indian lands to fifty years, and argue Congress

knew how to limit easement duration when it desired (Doc. 47 at 4). See 43 U.S.C. § 961. Defendants also cite the common historical usage of perpetual easements and the fact that before 1875 all rights-of-way across Indian lands were granted in fee simple (Doc. 47 at 5-6 & n.4). Essentially, Defendants infer from Congressional silence that Public Law 764 intended the granting of perpetual easements. Although reasonable, this position is less persuasive than the authority supporting Plaintiffs' position, that Congress intended for the Secretary to determine the nature and duration of easements procured under Public Law 764 and the fifty-year limit promulgated in the 1951 IRWA regulations was a valid exercise of such discretion.

First, it is noted that some measure of deference is owed to Plaintiff's position because it was adopted by the Department of the Interior ("DOI"), the agency charged with the administration of Public Law 764. Although DOI never released an official interpretation reconciling Public Law 764 and IRWA, internal DOI communications (including one authored by the Secretary) strongly suggest DOI policy was to interpret Public Law 764 as incorporating the 1951 IRWA regulations.[5] See U.S. v. Mead Corp., 533 U.S. 218, 228 (2001) ("The fair measure of deference to an agency administering its own statute has been understood to vary with circumstances, and courts have looked to the degree of the agency's care, its consistency, formality, and relative expertness") (footnotes omitted); Reno v. Koray, 515 U.S. 50, 61 (1995) (An "internal agency guideline, which is akin to an interpretive rule that does not require notice and comment . . . is still entitled to some deference") (cited in Meade, 533 U.S. at 228 n.9); see also Pub. L. No. 77-764 at § 4 ("The Secretary of the

---

[5] Plaintiffs provide two letters, one from the Secretary to the Commissioner of BOR dated March 29, 1950 and a second from the BIA Land Branch Chief to the BIA Commissioner dated December 7, 1951, both of which affirm that the requirements of IRWA were applicable to easements granted under Public Law 764 (Doc. 40 Ex. 5, 7). The second letter explicitly opines the 1951 IRWA regulations, including the fifty-year limitation, are applicable to easements procured under Public Law 764 (Doc. 40 Ex. 7). The Commissioner's December 17, 1951 approval of the easement, with a fifty-year limitation, appears to have resulted from the second letter (Doc. 40 Ex. 8).

- 10 -

Interior is hereby authorized to perform any and all acts and *to prescribe such regulations* as he may deem appropriate to carry out the provisions of this Act.") (emphasis added).

Plaintiffs' interpretation of Public Law 764 as not requiring permanent easements is also more consistent with both the text of the statute and Congressional Indian policy at the time of enactment. With respect to the text, the statute vests interpretive authority with the Secretary and is silent on the question of easement duration, indicating Congress intended for the Secretary to resolve any ambiguities in the text, including easement duration. See Pub. L. No. 77-764 at § 4 ("The Secretary of the Interior is hereby authorized to perform any and all acts and to prescribe such regulations as he may deem appropriate to carry out the provisions of this Act."); Meade Corp., 533 U.S. at 229 (Congressional intent to delegate authority to fill in the interstices of a statute is strongly implied when Congress confers rule-making authority to an administrative agency). With respect to Congressional Indian policy, Public Law 764 followed on the heels of the Indian Reorganization Act of 1934, which "reflected a new policy of the Federal Government . . . aimed to put a halt to the loss of tribal lands." Mescalero Apache Tribe v. Jones, 411 U.S. 145, 151 (1973); accord Babbitt Ford, Inc. v. Navajo Indian Tribe, 710 F.2d 587, 599 n.14 (9th Cir. 1983). Although the primary cause of land loss which concerned Congress when enacting the Indian Reorganization Act appears to be allotment, Congress' desire to deal more fairly with Indians and preserve Indian land rights would logically have extended to other forms of land loss, such as through the imposition of permanent servitudes.

In this way, Plaintiffs have the better argument, that Public Law 764 did not require the granting of permanent easements and there was no conflict between Public Law 764 and IRWA concerning easement duration which caused IRWA's fifty-year limitation to be inapplicable to the easement. Accordingly, Defendants' argument is rejected.

Plaintiffs have thus met the burden of showing that Defendants' interpretation of Public Law 764 is incorrect, that the statute neither legislated an *in praesenti* grant nor mandated

permanent easements contrary to IRWA. Accordingly, the 1951 IRWA regulations were applicable to the easement and Defendants' requested equitable reformation will be dismissed for proposing an easement that would have been illegal at the time of formation.

Accordingly,

**IT IS ORDERED** Plaintiffs' Motion to Dismiss (Doc. 39) **IS GRANTED**.

**FURTHER ORDERED** Defendants' Counterclaim (Doc. 32) **IS DISMISSED**.

DATED this 3rd day of September, 2009.

_____
Roslyn O. Silver
United States District Judge